O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CATALINA GONTES,                    )  Case No. EDCV 12-0141-JPR
                                    )
                Plaintiff,          )
                                    )
          vs.                       )  MEMORANDUM OPINION AND ORDER
                                    )  AFFIRMING THE COMMISSIONER
MICHAEL J. ASTRUE,                  )
Commissioner of the Social          )
Security Administration,            )
                                    )
                Defendant.          )
                                    )
_____

**I.   PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying her application for Social Security Supplemental Security
Income ("SSI").  The parties consented to the jurisdiction of the
undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed October 15, 2012, which the Court has taken
under submission without oral argument.  For the reasons stated
below, the Commissioner's decision is affirmed and this action is
dismissed.

**II.  BACKGROUND**

     Plaintiff was born on April 30, 1967.  (Administrative

1  Record ("AR") 80.)  She has a seventh-grade education and is able
2  to communicate in English.  (AR 90, 97.)  Plaintiff has not
3  worked since 1991, although she earned a small amount of income
4  in 1993.  (AR 85, 91.)  On June 29, 2007, Plaintiff filed an
5  application for SSI, alleging a disability onset date of June 1,
6  1998.  (AR 80.)  The application was denied on September 27,
7  2007.  (AR 36-38.)  Plaintiff filed a request for
8  reconsideration, which was denied on September 9, 2008.  (AR 41-
9  45.)

10     After Plaintiff's application was denied, she requested a
11 hearing before an Administrative Law Judge ("ALJ").  (AR 48.)  An
12 initial hearing was held on May 6, 2010, at which Plaintiff, who
13 was represented by counsel, appeared and testified on her own
14 behalf.  (AR 479-508.)  In a written decision issued on June 7,
15 2010, the ALJ determined that Plaintiff was not disabled.  (AR
16 22-33.)  Plaintiff then requested review of the ALJ's decision,
17 and on October 29, 2010, the Appeals Council reversed and
18 remanded the matter for further proceedings.  (AR 65-67.)  On
19 June 7, 2011, another hearing was held, at which Plaintiff again
20 testified on her own behalf.  (AR 455-78.)  On June 17, 2011, the
21 ALJ issued a written decision again determining that Plaintiff
22 was not disabled.  (AR 12-21.)  Plaintiff requested review of the
23 ALJ's decision.  (AR 11.)  On December 2, 2011, the Appeals
24 Council denied Plaintiff's request for review.  (AR 5-7.)  This
25 action followed.

26 **III.  STANDARD OF REVIEW**

27     Pursuant to 42 U.S.C. § 405(g), a district court may review
28 the Commissioner's decision to deny benefits.  The ALJ's findings

2

1  and decision should be upheld if they are free of legal error and
2  are supported by substantial evidence based on the record as a
3  whole.  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.
4  Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481
5  F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such
6  evidence as a reasonable person might accept as adequate to
7  support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>
8  <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than
9  a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504
10 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,
11 882 (9th Cir. 2006)).  To determine whether substantial evidence
12 supports a finding, the reviewing court "must review the
13 administrative record as a whole, weighing both the evidence that
14 supports and the evidence that detracts from the Commissioner's
15 conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.
16 1996).  "If the evidence can reasonably support either affirming
17 or reversing," the reviewing court "may not substitute its
18 judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

19 **IV.   THE EVALUATION OF DISABILITY**

20     People are "disabled" for purposes of receiving Social
21 Security benefits if they are unable to engage in any substantial
22 gainful activity owing to a physical or mental impairment that is
23 expected to result in death or which has lasted, or is expected
24 to last, for a continuous period of at least 12 months.  42
25 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
26 (9th Cir. 1992).

27     A.   <u>The Five-Step Evaluation Process</u>
28     The ALJ follows a five-step sequential evaluation process in

assessing whether a claimant is disabled.  20 C.F.R.

§ 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir.

1995) (as amended Apr. 9, 1996).  In the first step, the

Commissioner must determine whether the claimant is currently

engaged in substantial gainful activity; if so, the claimant is

not disabled and the claim must be denied.  § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity,

the second step requires the Commissioner to determine whether

the claimant has a "severe" impairment or combination of

impairments significantly limiting his ability to do basic work

activities; if not, a finding of not disabled is made and the

claim must be denied.  § 416.920(a)(4)(ii).  If the claimant has

a "severe" impairment or combination of impairments, the third

step requires the Commissioner to determine whether the

impairment or combination of impairments meets or equals an

impairment in the Listing of Impairments ("Listing") set forth at

20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is

conclusively presumed and benefits are awarded.

§ 416.920(a)(4)(iii).  If the claimant's impairment or

combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to

determine whether the claimant has sufficient residual functional

capacity ("RFC")[1] to perform his past work; if so, the claimant

is not disabled and the claim must be denied.

§ 416.920(a)(4)(iv).  The claimant has the burden of proving that

---

[1]RFC is what a claimant can still do despite existing
exertional and nonexertional limitations.  20 C.F.R. § 416.945;
<u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  § 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 29, 2007, the date of her SSI application.  (AR 17.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "obesity, degenerative disc disease of the neck and back, bilateral carpal tunnel syndrome, status post left carpal tunnel surgical release, history of left knee arthroscopy, diabetes, and asthma."  (Id.) He also found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe."  (Id.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 18.)  At step four, the ALJ found that Plaintiff retained the RFC to perform "light work"[2] with the limitations that Plaintiff

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," a "good deal of walking or standing" or sitting,

5

1   can lift and carry 20 pounds occasionally and 10 pounds

2   frequently; she can sit six hours in an eight-hour

3   workday with normal breaks; she can stand and walk six

4   hours in an eight-hour workday with normal breaks; she

5   can perform postural activities occasionally, but cannot

6   climb ladders, ropes, or scaffolds; she cannot work at

7   unprotected heights or balance; she can perform frequent,

8   but not constant fine and gross manipulation bilaterally;

9   and she should avoid pulmonary irritants.

10  (Id.)  At step five, the ALJ found that jobs existed in

11  significant numbers in the national economy that Plaintiff could

12  perform.  (AR 20-21.)  Accordingly, the ALJ determined that

13  Plaintiff was not disabled.  (AR 21.)

14  **V.   DISCUSSION**

15      Plaintiff alleges that the ALJ erred in (1) finding her

16  subjective symptom testimony not credible and (2) evaluating the

17  opinions of her treating physician.  (J. Stip. at 3.)[3]

18      A.   The ALJ Did Not Improperly Discount Plaintiff's

19           Subjective Symptom Testimony

20      Plaintiff argues that the ALJ failed to articulate clear and

21  convincing reasons for discounting her subjective symptom

22  testimony.  (J. Stip. at 3-6, 16-17.)  Reversal is not warranted

23  on this basis, however, because the ALJ made specific, clear

24  _____

25  "with some pushing and pulling of arm or leg controls."  20
    C.F.R. § 416.967(b).  A person capable of performing light work
26  is also capable of performing sedentary work, as defined in
    § 416.967(a).  Id.
27

28      [3]Plaintiff does not contest the ALJ's finding that her
    mental impairment was not severe.  (J. Stip. at 27.)

findings as to Plaintiff's credibility that were consistent with the medical evidence of record.

### 1. Applicable law

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Those credibility findings must be supported by the record, but the ALJ need not provide "detailed" citations to it. See Carter v. Astrue, No. 08 CV 0895 JM (PCL), 2009 WL 2382536,

1  at *4 (S.D. Cal. July 30, 2009) (citing <u>Thomas v. Barnhart</u>, 278

2  F.3d 947, 958-59 (9th Cir. 2002)).  Absent affirmative evidence

3  of malingering, however, those findings must provide "clear and

4  convincing" reasons for rejecting the claimant's testimony.

5  <u>Lester</u>, 81 F.3d at 834.  If the ALJ's credibility finding is

6  supported by substantial evidence in the record, the reviewing

7  court "may not engage in second-guessing."  <u>Thomas</u>, 278 F.3d at

8  959.

9          2.  <u>Relevant facts</u>

10     In connection with her SSI application, Plaintiff alleged

11 that she suffered from the following conditions:

12     arthritis (back & neck), carpal tunnel (left & right

13     hands/wrists), left knee, depression[,] back/neck:

14     arthritis in back/neck.  They get very stiff & I have a

15     hard time moving, bending or turning. [C]arpal tunnel:

16     It's in both of my wrists/hands.  My hands are constantly

17     stiff, numb, and hurting.  My arms get extremely tired &

18     numb, like I've been using them for hours when I've been

19     doing a simple task . . . .  Back, neck, [left] knee,

20     depression, carpal tunnel in both arms[.]

21 (AR 91.)  She claimed that her conditions limited her ability to

22 work in the following ways:

23     back/neck: I cannot pick up heavy items, I get very stiff

24     and have a difficult time moving.  It also is very

25     painful carpal tunnel: I drop things & have a hard time

26     picking things up.  For example: I have a difficult time

27     doing housework because I drop the dishes when I'm

28     washing them[.]  knee: I can't squat, walk [a lot], and

8

always need to lean or balance on something[.] depression: It affects my desire to be around other people[.] back/neck, carpal tunnel: very painful[.] knee: very painful & I have begun to gain weight because I am inactive, due to the injury[.] depression: I used to like being around people, but now I avoid them and stay at home.  The only thing that forces me to participate in life are my kids & grandkids and being there for their activities[.]

(Id.)  Her application also stated, "I do not need help in personal care, hygiene or upkeep of a home."  (AR 81.)

At the hearing, Plaintiff testified that she had "problems" with her knees, back, arms, and hands for which she received shots to relieve the pain.  (AR 460.)  She stated that the injections in her lower back provided "some" relief but the pain "comes back within a month"; the injections in her hand "helped me out"; and the injections in her hip to treat pain in her leg did not work and the pain "just came back like right away."  (AR 461.)  She testified that her arms were numb and tingly and she was unable to grasp properly and thus "drop[s] things a lot." (AR 463.)  She stated that she could not lift any more than 10 pounds.  (Id.)  She testified that she could go grocery shopping for 20 minutes at a time and be "on [her] feet continuously for 20 minutes" without a break, but she would feel tired afterward and need to rest for 20 minutes before being able to put the groceries away.  (AR 465-66.)  She could cook for 15 minutes and then would feel "okay" and would "sit down and relax" before getting up and starting to do the dishes; clean the bathroom for

9

about two minutes and feel "okay" afterward; and vacuum for
"[a]bout three minutes" and then "relax for a little bit." (AR
466-68.)  She was able to sleep "through the night" without pain
after taking Ambien.  (AR 475-76.)  She took care of four
children who were under 18 and living at home.  (AR 458-59.)
When asked whether she would be able to work if she "didn't have
to lift more than . . . 10 pounds" and "could alternate between
sitting/standing between the eight-hour workday as you so desire"
but "would have to do this eight hours a day for five days a
week," she stated that she could not because of "the pain that
goes down my neck to my arms."  (AR 469.)  She also stated that
her "overall condition" had gotten "worse" since she last
testified, in May 2010.  (Id.)

     In his written opinion, the ALJ found, "[a]fter careful
consideration of the evidence," that Plaintiff's "medically
determinable impairments could reasonably be expected to cause
the alleged symptoms; however, the claimant's statements
concerning the intensity, persistence and limiting effects of
these symptoms are not credible to the extent they are
inconsistent with" the ALJ's RFC assessment.  (AR 19.)  He noted
that Plaintiff "acknowledges pain relief and sleeping well at
night" and that despite her "alleged symptoms and limitations,"
she "continues to cook, perform household chores, and shop for
groceries."  (Id.)  He further noted that "[p]ain management
progress notes indicate the claimant experiences pain relief
because of medication and injections," and "a review of the
laboratory findings shows the consultative examiners were
justified in their functional assessments [that Plaintiff could

10

perform medium work]." (Id.)  He gave "some weight" to
Plaintiff's "treatment for chronic pain" but found that the
"severity of the pain" that Plaintiff alleged was
"disproportionate to the signs and laboratory findings." (Id.)
He further noted that Plaintiff "acknowledges she still cooks,
performs household chores, and shops for groceries" and "performs
activities of daily living and sleeps well," and thus it was
unreasonable to conclude that she was not capable of performing
even sedentary work. (AR 20.)  He noted that "[a]lthough the
claimant's alleged symptoms and limitations are not entirely
supported by the objective medical evidence, the undersigned has
considered them," and he concluded that "[t]here is no
justification for deviating from the [RFC] assessment noted in
the [June 2010] decision." (Id.)

           3.   Analysis

     Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.  Contrary to Plaintiff's
arguments, the ALJ provided specific reasons for rejecting
Plaintiff's credibility: medical evidence showed that her
symptoms were well controlled with medication and injections; her
daily activities were inconsistent with her pain allegations; and
her allegations of the severity of her pain were inconsistent
with such objective medical evidence as test results and
laboratory findings.  (AR 19-20.)[4]

---

     [4]Defendant asserts that the ALJ incorporated by reference
his statement from the June 2010 decision that Plaintiff's poor
work history indicated that she was not credible regarding her

The ALJ correctly found that Plaintiff's testimony was inconsistent with the objective medical evidence.  Tests of Plaintiff's knee in December 2006 showed only "very slight lateral subluxation," no fracture, and "[t]iny suprapatellar joint effusion."  (AR 143.)  X-rays taken after Plaintiff underwent knee surgery in March 2008 (AR 212) revealed a "normal left knee" with "no evidence of a fracture or osseous injury" (AR 362).  Nerve conduction studies performed in January 2008, after Plaintiff's May 2007 carpal tunnel surgery (AR 233), revealed "mild[] improve[ment]" to Plaintiff's left wrist since the surgery (AR 159).  The same study showed new "[c]hronic cervical radiculopathy," but another study performed later, in April 2010, showed "[n]o evidence of cervical radiculopathy," indicating that Plaintiff's condition had improved with treatment.  (AR 268.)  An examining doctor also noted in July 2008 that "[s]ince her surgery [Plaintiff] has improved carpal tunnel syndrome on the left."  (AR 414.)  In September 2010, Dr. Navdeep Loomba, the pain-management specialist to whom Plaintiff was referred by her primary physician, noted that Plaintiff "has good range of motion of the bilateral upper extremities," her motor strength was "5/5 in the bilateral upper extremities," "[s]ensory is grossly normal, bilateral equal and intact to pinprick sensation," and

---

alleged inability to work.  (J. Stip. at 15; AR 29.)  The ALJ did not state that he was incorporating by reference that portion of his previous opinion (see AR 19-20); thus, the Court does not address this argument.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (internal quotation marks and citation omitted)).

"[d]eep tendon reflexes are normal." (AR 432.) Dr. Loomba also noted in March 2011 that Plaintiff's "pain is relieved by medications, rest, position change," "[t]he pain medications are helping," and injections relieved her pain by "50-60%." (AR 441.) An MRI of Plaintiff's cervical spine performed in February 2008 showed only "mild" loss of lordosis, "mild" disc space narrowing and disc dessication, "minimal" and "mild" disc bulge, and "slight" narrowing of the central canal. (AR 191-93.) Tests of Plaintiff's lumbar spine in December 2006 showed "[v]ery minimal degenerative change." (AR 143.) An x-ray of Plaintiff's lumbar spine taken in June 2008 showed "[e]xtenuated lordosis" and "moderate spurring of the anterior endplates of L1, L2, L4, and L5" but "normal" disc space heights and facet joints and "no obvious pars defects." (AR 342.) Another x-ray of Plaintiff's lumbar spine, taken in October 2009, showed "narrowing of the L5-S1 interspace consistent with discogenic disease" but "no evidence of fracture or osseous injury," "no evidence of spondylolysis or spondylolisthesis," "normal" "sacroiliac joints," and "mild" osteoarthritis changes. (AR 360.)

     In September 2007, consulting examiner Dr. Jeff Altman, a specialist in physical medicine and rehabilitation (AR 171), found that Plaintiff had only minimal impairments and that she had a normal gait, did not appear to be in acute distress, had good range of motion in her extremities and only mildly reduced range of motion in the thoracolumbar spine with no tenderness upon palpation, had intact strength and sensation, and was neurologically intact. (AR 169-71.) In August 2008, consulting examiner Dr. John Woodward, a neurologist and psychiatrist (AR

200), conducted a neurological examination of Plaintiff and found that she had a normal gait, normal motion and coordination in her extremities, intact reflexes, slight hypalgesia in her left foot, and negative Tinel's sign and Phalen's sign for carpal tunnel syndrome.  (AR 198-200.)  Dr. Altman and state agency physicians Dr. Franklin Kalmar and Dr. G. Taylor-Holmes all opined that Plaintiff was capable of performing medium work (AR 171, 173-77, 254-58), and Dr. Woodward similarly opined that Plaintiff had no limitations in sitting, standing, walking, lifting, carrying, or reaching; she could grasp, handle, finger, or feel frequently but not continuously; and she could not engage in continuous, very repetitive, or very strenuous activity in either hand because of her carpal tunnel syndrome but could otherwise perform work activities (AR 200).  Plaintiff's asthma was also under control: a September 2008 chest x-ray showed that Plaintiff's chest was "normal" and her lungs were "expanded and clear."  (AR 318.) Similarly, Plaintiff's diabetes was well-controlled: in lab results from December 2009, Plaintiff's mean blood glucose was 133, at or near normal for a diabetic[5] (AR 357), and she did not allege in her SSI application or testimony that she suffered from any diabetes-related complications that affected her ability to work (AR 91, 458-70).

Because Plaintiff's testimony conflicted with the evidence

---

[5]Target blood sugar levels for nonpregnant adults with diabetes are 70-130 mg/dl before a meal and <180 mg/dl after a meal.  See Checking Your Blood Glucose - American Diabetes Association, available at http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control/checking-your-blood-glucose.html (last visited Dec. 12, 2012).

that her medical conditions only minimally affected her ability
to work and that her pain, diabetes, and asthma were well-
controlled with medication and other treatments, the ALJ properly
discounted it.  See, e.g., 20 C.F.R. § 416.929(c)(4)(iv) (ALJ may
consider effectiveness of medication in evaluating severity and
limiting effects of an impairment); SSR 96-7p, 1996 WL 374186, at
*6 ("medical signs and laboratory findings that . . . demonstrate
worsening or improvement of the underlying medical condition . .
. may also help an adjudicator to draw appropriate inferences
about the credibility of an individual's statements"); Johnson v.
Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that
"contradictions between claimant's testimony and the relevant
medical evidence" provided clear and convincing reason for ALJ to
reject plaintiff's subjective symptom testimony); Tonapetyan v.
Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (credibility
determination based on, among other things, plaintiff's "tendency
to exaggerate" proper when supported by "substantial evidence").

    The ALJ's finding that Plaintiff's testimony conflicted with
her daily activities was also proper.  Although it is true that
"one does not need to be 'utterly incapacitated' in order to be
disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.
2001), the extent of Plaintiff's activities here supports the
ALJ's finding that Plaintiff's reports of her impairment were not
fully credible.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d
1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127,
1130 (9th Cir. 1990) (finding that claimant's ability to "take
care of her personal needs, prepare easy meals, do light
housework and shop for some groceries . . . may be seen as

1  inconsistent with the presence of a condition which would

2  preclude all work activity") (citing <u>Fair v. Bowen</u>, 885 F.2d 597,

3  604 (9th Cir. 1989)).   The ALJ properly noted that Plaintiff's

4  ability to do daily activities such as cooking, cleaning, and

5  grocery shopping for herself and four children was at odds with

6  her testimony that she could not perform even the most basic of

7  work activities.  (AR 19-20.)  Although Plaintiff testified that

8  sometimes her sons helped her with her household chores, she

9  wrote on her application that she did not "need help in . . .

10  upkeep of a home."  (AR 81.)

11      The ALJ provided legally sufficient reasons for rejecting

12  Plaintiff's testimony and specific examples of how Plaintiff's

13  testimony was contradicted by the record.   In fact, he appears to

14  have given Plaintiff the benefit of the doubt with respect to the

15  severity of her restrictions, as most of the consultative

16  physicians found that she was capable of medium work (<u>see</u> AR 171,

17  173-77, 254-58) but the ALJ's RFC finding limited her to light

18  work with some additional restrictions (AR 18).  He thus did not

19  materially err in assessing Plaintiff's credibility, and reversal

20  is not warranted on this basis.

21      B.    <u>The ALJ Did Not Err in Considering the Opinions of</u>

22            <u>Plaintiff's Treating Physician</u>

23      Plaintiff contends that the ALJ did not properly evaluate

24  the opinions of her treating physician, Dr. Arthur Jimenez.  (J.

25  Stip. at 18-20, 25-27.)  Reversal is not warranted on this basis

26  because the ALJ gave specific and legitimate reasons for

27  rejecting Dr. Jimenez's opinions, and the ALJ's evaluation of the

28  medical evidence was consistent with substantial evidence in the

1  record.

2      1.  Applicable law

3      Three types of physicians may offer opinions in social

4  security cases: "(1) those who treat[ed] the claimant (treating

5  physicians); (2) those who examine[d] but d[id] not treat the

6  claimant (examining physicians); and (3) those who neither

7  examine[d] nor treat[ed] the claimant (non-examining

8  physicians)." Lester, 81 F.3d at 830.  A treating physician's

9  opinion is generally entitled to more weight than the opinion of

10 a doctor who examined but did not treat the claimant, and an

11 examining physician's opinion is generally entitled to more

12 weight than that of a nonexamining physician.   Id.

13     The opinions of treating physicians are generally afforded

14 more weight than the opinions of nontreating physicians because

15 treating physicians are employed to cure and have a greater

16 opportunity to know and observe the claimant.  Smolen, 80 F.3d at

17 1285.  The weight given a treating physician's opinion depends on

18 whether it was supported by sufficient medical data and was

19 consistent with other evidence in the record.  See 20 C.F.R.

20 § 416.927(c)(2).  If a treating physician's opinion was well

21 supported by medically acceptable clinical and laboratory

22 diagnostic techniques and is not inconsistent with the other

23 substantial evidence in the record, it should be given

24 controlling weight and rejected only for "clear and convincing"

25 reasons.  See Lester, 81 F.3d at 830; § 416.927(c)(2).  When a

26 treating physician's opinion conflicts with other medical

27 evidence or was not supported by clinical or laboratory findings,

28 the ALJ must provide only "specific and legitimate reasons" for

17

discounting that doctor's opinion.  <u>Orn v. Astrue</u>, 495 F.3d 625,
632 (9th Cir. 2007).  Indeed, the ALJ may discredit treating-
doctor opinions that are conclusory, brief, and unsupported by
the record as a whole or by objective medical findings.  <u>See</u>
<u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th
Cir. 2004); <u>Thomas</u>, 278 F.3d at 957.  Other factors relevant to
the evaluation of a treating physician's opinion include the
"[l]ength of the treatment relationship and the frequency of
examination" as well as the "[n]ature and extent of the treatment
relationship" between the patient and the physician.
§ 416.927(c)(2)(i)-(ii).

### 2.   Relevant facts

Plaintiff began seeing Dr. Jimenez as her primary care
physician in 2001 for her "diabetes, asthma, high blood pressure,
cholesterol problems, . . . thyroid, depression, knee injury, and
. . . back/neck problems."  (AR 94.)  She testified that she saw
Dr. Jimenez "at least once a month," "[m]ostly" for the pain in
her knees, back, arms, and hands.  (AR 460.)  In April 2010, Dr.
Jimenez filled out a check-box form stating that, in an eight-
hour workday, Plaintiff could not lift even 10 pounds; she could
stand, walk, and sit for less than two hours a workday; she could
sit 15 minutes and stand 20 minutes before needing to change
position; she must walk for 20 minutes every 20 minutes; she
could only occasionally twist and climb stairs and could never
stoop, crouch, or climb ladders; she must avoid concentrated
exposure to humidity and all exposure to extreme temperatures,
airborne irritants, and heights; and she would likely be absent
from work more than three times a month.  (AR 379-81.)  He stated

that Plaintiff's "lumbar narrowing" and "carpal tunnel syndrome"
supported his conclusions.  (AR 380.)  In September 2010 he
filled out an RFC Questionnaire noting substantially similar
limitations.  (AR 434-38.)

The ALJ evaluated Dr. Jimenez's opinions as follows:

> In physical residual functional capacity assessments
> dated April 4, 2010 and September 2, 2010, Dr. Jimenez
> states the claimant cannot even sustain sedentary work
> and would miss work more than three times a month.
> However, the undersigned gives little weight to Dr.
> Jimenez's opinion.  As discussed in the undersigned's
> last decision, Dr. Altman's consultative orthopedic
> evaluation and Dr. Woodard's consultative neurologic
> evaluation led them to conclude that the claimant was
> capable of performing medium work.  Additionally, a
> review of the laboratory findings shows the consultative
> examiners were justified in their functional assessments.
> The undersigned gives some weight to the claimant's
> treatment for chronic pain, but the severity of the pain
> is disproportionate to the signs and laboratory findings.
> The claimant also acknowledges she still cooks, performs
> household chores, and shops for groceries.  Thus, Dr.
> Jimenez unreasonably concludes the claimant cannot
> perform sedentary work and would miss work more than
> three times a month.

(AR 20.)

3.   <u>Analysis</u>

As discussed above, evidence in the record supported the

ALJ's finding that Plaintiff was capable of performing light work
with some restrictions.  (See AR 43, 159, 169-71, 173-77, 191-93,
198-200, 254-58, 268, 318, 342, 357, 360, 362, 414, 432, 441.)
Dr. Jimenez's two RFC forms were in check-box form, were
conclusory, and conflicted with substantial other evidence in the
record; the ALJ was entitled to reject them on that basis.  See
Batson, 359 F.3d at 1195 ("The ALJ need not accept the opinion of
any physician, including a treating physician, if that opinion is
brief, conclusory, and inadequately supported by clinical
findings.").  Dr. Jimenez noted that Plaintiff had complained of
pain in her back, neck, legs, and arms and that she had been
diagnosed with asthma, degenerative conditions in her spine and
knee, and carpal tunnel syndrome (AR 380, 464), but he did not
explain how these diagnoses led to his findings that she was
incapable of even sedentary work, particularly given the ample
evidence in the record, including results from tests and
consultations ordered by Dr. Jimenez himself (see AR 156, 159,
191-93, 265, 268, 318, 342, 357, 360, 362, 430-32, 441), that
Plaintiff's conditions were well-controlled with medication and
other treatments and were not disabling.  Plaintiff does not
point to anything in Dr. Jimenez's treatment notes for Plaintiff
supporting the extremely restrictive findings on the two forms.
Moreover, the ALJ was entitled to credit the opinions of Drs.
Woodman and Altman instead of Dr. Jimenez because their opinions
were supported by independent clinical findings and thus
constituted substantial evidence upon which the ALJ could
properly rely.  See Tonapetyan, 242 F.3d at 1149; Andrews v.
Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Further, the

1   opinions of Drs. Woodman, Altman, Kalmar, and Taylor-Holmes were

2   consistent with each other and with substantial other evidence in

3   the record, and thus the ALJ was entitled to give those opinions

4   more weight than Dr. Jimenez's.  See Tonapetyan, 242 F.3d at 1149

5   (opinion of nonexamining medical expert "may constitute

6   substantial evidence when it is consistent with other independent

7   evidence in the record"); Andrews, 53 F.3d at 1041.

8        The ALJ was also entitled to reject Dr. Jimenez's opinions

9   to the extent they imposed a highly restrictive RFC that was

10  inconsistent with Plaintiff's daily activities.  Plaintiff

11  acknowledged that she daily kept house for herself and four

12  minors and that she "[did] not need help" in doing so (AR 81,

13  458-59), and yet Dr. Jimenez found that she would have to miss

14  more than three days of work a month.  His finding was

15  inconsistent with the reality of Plaintiff's daily activities.

16  See Rollins, 261 F.3d at 856 (ALJ's finding that doctor's

17  "restrictions appear to be inconsistent with the level of

18  activity that [plaintiff] engaged in by maintaining a household

19  and raising two young children, with no significant assistance

20  from her ex husband," was specific and legitimate reason for

21  discounting opinion); Morgan v. Comm'r of Soc. Sec. Admin., 169

22  F.3d 595, 601-02 (9th Cir. 1999) (ALJ permissibly rejected

23  treating physician's opinion when it conflicted with plaintiff's

24  activities); see also Fisher v. Astrue, 429 F. App'x 649, 652

25  (9th Cir. 2011) (conflict between doctor's opinion and claimant's

26  daily activities was specific and legitimate reason to discount

27  opinion).

28        Plaintiff argues that under Orn, 495 F.3d at 632, even if

21

1   the laboratory test results and other independent evidence in the

2   record "did not fully corroborate Dr. Jimenez's opinions," in

3   rejecting those opinions the ALJ was still required to articulate

4   "specific and legitimate reasons based on substantial evidence in

5   the record." (J. Stip. at 25-26.)  As discussed above, that is

6   precisely what the ALJ did.  The ALJ properly found that Dr.

7   Jimenez's opinions were inconsistent with the laboratory findings

8   and other medical evidence in the record and his RFC assessment

9   was inconsistent with Plaintiff's daily activities.  (AR 19-20.)

10  These were specific and legitimate reasons for rejecting Dr.

11  Jimenez's opinions, and they were supported by substantial

12  evidence in the record.  The ALJ's rejection of Dr. Jimenez's

13  opinions was therefore proper.  See <u>Orn</u>, 495 F.3d at 632-33.

14       The Court must consider the ALJ's decision in the context of

15  "the entire record as a whole," and if the "evidence is

16  susceptible to more than one rational interpretation, the ALJ's

17  decision should be upheld."  <u>Ryan v. Comm'r of Soc. Sec.</u>, 528

18  F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks

19  omitted).  Although Plaintiff points to various pieces of

20  evidence in the record that could support a more restrictive RFC

21  finding if interpreted differently than by the ALJ, read in the

22  context of the record as a whole, Plaintiff's symptoms were not

23  as severe as she alleged and were well-controlled with medication

24  and other treatments; the ALJ reasonably found that Plaintiff's

25  limitations did not prevent her from being able to work.

26  Reversal is therefore not warranted on this basis.

27  **VI.  CONCLUSION**

28       Consistent with the foregoing, and pursuant to sentence four

1  of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered
2  AFFIRMING the decision of the Commissioner and dismissing this
3  action with prejudice.  IT IS FURTHER ORDERED that the Clerk
4  serve copies of this Order and the Judgment on counsel for both
5  parties.

7  DATED: December 19, 2012

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[6]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."